# Bank of Phoenix City *v.* Taylor.

### Assumpsit.

(Decided June 8, 1916.   72 South. 264.)

1. **Evidence; Hearsay; Declaration of Agent.**—Where the action was against a bank to recover for a deposit alleged to have been made, where the deposit was denied, evidence of a statement by the cashier was not admissible since the declaration did not relate to a matter in the course of the cashier's duty, but was merely narrative of past events, and was not binding on the principal of the bank; the question at issue being not the title of the bank to the money, but whether or not the deposit was made.

2. **Same.**—In such case, evidence that the cashier stated to another witness that Phelps made the deposit for his own benefit, and not for the benefit of plaintiff, was inadmissible.

3. **Same; Admission Because of Other Evidence.**—Irrelevant, incompetent or illegal evidence may be admitted to rebut evidence of like character; and while a hearsay declaration may be rebutted by evidence of a similar nature, the rebutting evidence must be directed, not to the ultimate facts, but to the hearsay declaration.

4. **Banks and Banking; Deposits; Evidence.**—Where the action was to recover deposits alleged to have been made, and the bank books were introduced in evidence, and did not show the deposits, evidence of defalcations by

the cashier which raised an inference that he converted the deposits, is admissible.

**5. Evidence; Collective Facts.**—A witness in a position to know may testify that a bank suspended business, without stating the facts on which he based his statement of the collective facts, as the party objecting has the privilege of cross examining as to the subsidiary facts.

APPEAL from Lee Law and Equity Court.

Heard before Hon. LUM DUKE.

Action by Henry Taylor against the Bank of Phoenix City to recover for a deposit. Judgment for plaintiff and defendant appeals. Reversed and remanded.

BARNES & BREWER, and N. D. DENSON & SONS, for appellant.
SMITH & WATKINS, and THOS. D. SAMFORD, for appellee.

SAYRE, J.—Appellee Taylor sued the appellant bank to recover a sum of money alleged to have been left on deposit with the bank. The witness Phelps testified that he had placed the money in question on deposit for the account of plaintiff, and in this he was corroborated by the witness Curetin. Plaintiff produced a passbook showing a credit in agreement with the testimony of these witnesses. Moses, who was cashier at the time, and his wife, who assisted in the work of the bank, the two being the only persons connected with the bank and present at the time, had both died before this suit was brought. The bank denied the deposit and brought evidence tending to show that the credit entry in the passbook was a forgery.

(1) Plaintiff's witness G. L. White had been bookkeeper for the bank, but his connection with it had ceased on February 1, 1913. He was allowed to testify, over defendant's objection, that on the day of the alleged deposit, to-wit, February 25, 1913, he was at the bank, something like an hour after the time of the deposit as fixed by the two witnesses mentioned above, and that the following conversation, which we quote in the language of the bill of exceptions, passed between him and Moses: "Mr. Moses said to me, 'Doesn't it beat hell how business keeps up?' and I said, 'Yes, what has happened now?' and he said, 'Mr. Connally (Conally was the bank's bookkeeper at the time) has just telephoned to me from the Clearing House (in Columbus, Ga., where he had gone to arrange the bank's clearings for the previous day) that he lost pretty heavily'—and to the best of my recollection he

said it was $6,000. He said, 'I didn't know where I was going to get the money to pay that, but soon after that Charlie Phelps came in with a big deposit from Macon that he had been expecting.' "

The witness here interpolated: "We had been expecting it before I left there." Resuming his statement of what Moses said, the witness further testified: "He said Mr. Phelps came in and brought that big deposit from Macon, and he (Moses) reached over to the counter and picked up several rolls of currency, $500 packages (witness indicating with hand about a span in thickness)."

This evidence as to what Moses said vitally touched the main, in fact the only disputed, issue in the cause, and in our judgment its admission was reversible error. Considered in connection with the other evidence, the versimilitude of this testimony was rather striking, and its effect may have been highly persuasive of plaintiff's case. But that may be the case with all hearsay, and its possible or probable effect cannot be allowed to set aside an established rule of evidence. To be admissible against the principal, the declarations of an agent must be within the scope of the authority conferred upon the agent and made while in the exercise of his authority. Where the declarations of an agent are merely narrative of a past transaction, they are hearsay and not competent against the principal. This rule applies in the case of private corporations. In *Cunningham v. Cochran*, 18 Ala. 479, 52 Am. Dec. 230, this court said: "We know of no rule of law that will justify the admissions, or declarations, of the president of a bank as evidence to charge the bank with a liability, merely on the ground that he is president. If in the discharge of a duty required of him by his office, or if he be an agent of the bank to do any particular act, and in the performance of such duty, or act, he makes an admission, which is part of the res gestæ, such admission, being part of the act itself, is admissible evidence against the bank, as would be the admissions of any other agent made under the same circumstances, or within the scope of his authority. The admissions of an agent, to bind his principal, must be made at the time of doing some act in the execution of his authority."

See, in this connection, *M. & C. R. R. Co. v. Womack*, 84 Ala. 149, 4 South. 618; *Southern Ry. v. Reeder*, 152 Ala. 227, 44 South. 699, 126 Am. St. Rep. 23.

That these statements of Moses were not of the res gestæ of the alleged receipt of money is clear.—*A. G. S. Ry. Co. v. Hawk,* 72 Ala. 112, 47 Am. Rep. 403; *L. & N. R. R. Co. v. Pearson,* 97 Ala. 211, 12 South. 176. Nor can their admission be justified on the ground that they explained the possession of money. The question at issue was, not how or in what right Moses or the bank held any money in his or its possession, but whether indeed the bank, or Moses as its agent, had received any money from or on account of the plaintiff. The only material purpose and effect of this testimony, when referred to the only allegation of fact litigated between the parties, was to show that the certain money to which Moses referred had been previously received from plaintiff or his alleged agent Phelps. It did not explain possession, but related to title. Its purpose and effect was to demonstrate a then past transaction.—*Allen v. Prater,* 30 Ala. 458. The right in which the bank had held any money in its possession was not the fact in controversy, but the only disputed question was whether the bank had received any money from or on account of the plaintiff, and the solution of this question depended upon the finding as to a transaction that was past at the time of the conversation the witness was permitted to detail.—*Tomkies v. Reynolds,* 17 Ala. 109; *Barfield v. Evans,* 187 Ala. 579, 65 South. 928. This evidence was not brought within any recognized exception to the rule which excludes hearsay, and it should have been excluded.

(2, 3) In view of our conclusion to reverse the judgment in this cause on the point already stated, it is hardly necessary to pass upon that ruling by which the court excluded that evidence by which the defendant proposed to show that at a still later hour of the day Moses said to Connally, in effect, that Phelps did not make a deposit for plaintiff, but had made a deposit on his own account. This proffered testimony was incompetent, and will not be admitted on another trial. The rule that irrelevant, incompetent, or illegal evidence may be admitted without error to rebut evidence of a like character, must be limited to cases in which the rebuttal is confined to the evidential fact to which such evidence was first adduced. It is not contended, of course, that such evidence, once admitted, opens the way to the adverse party for the indiscriminate introduction of like evidence touching the ultimate facts in litigation. The rebuttal in such cases by irrelevant, incompetent, or illegal evidence, must be limited to such evidence

of the same character as tends directly and strictly to contradict that which has been received.—Jones on Evi. (2d Ed.) § 873, and authorities cited in note 36. The cases we have on this subject seem to point to the rule that the permissible office of such evidence in the way of rebuttal is merely to neutralize by direct contradiction the force and effect of the evidence improperly adduced by the adverse party, whether over objection or without objection.—*Findley v. Pruitt,* 9 Port. 195; *Havis v. Taylor,* 13 Ala. 324; *Ford v. State,* 71 Ala. 385; *Gandy v. State,* 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28; *Morgan v. State,* 88 Ala. 223, 6 South. 761; *Winslow v. State,* 92 Ala. 81, 9 South. 728; *M. & B. R. R. Co. v. Ladd,* 92 Ala. 289, 9 South. 169; *McIntyre v. White,* 124 Ala. 177, 26 South. 937; *Gordon v. State,* 129 Ala. 113, 30 South. 30; *Longmire v. State,* 130 Ala. 66, 30 South. 413; *Lockridge v. Brown,* 184 Ala. 106, 63 South. 524. In *Smith v. Pritchett,* 98 Ala. 649, 13 South. 569, the judgment was reversed for the admission of incompetent evidence which, though directed to the same ultimate issue in the cause, was not directly and strictly in rebuttal of the incompetent evidence admitted without objection on behalf of the opposing party.

(4) One of the bank's books of entry was put in evidence by the defendant without objection from the plaintiff. This book showed no entry of the deposit which plaintiff claimed had been made to his credit. The bank offered this evidence, we take it, in connection with the presumed regularity and completeness of its book as showing a history of all its transactions. The entries in this book were made by Moses, and it may be conceived that this absence of an entry, in connection with plaintiff's evidence tending to show the fact of a deposit, irregularities in the bank's books of account, the subsequent discovery of a large "shortage" in Moses' accounts, the closing of the bank so far as the taking of deposits was concerned, and the suicide of Moses about that time, all which facts were supported by competent evidence—in these circumstances it may be conceived that the absence of an entry tended to support a theory on behalf of plaintiff to the effect that Moses, while receiving the money for the bank in the ostensibly regular course of its business, converted it to his own use. At any rate, plaintiff did not object to the book. And what else the court allowed to go to the jury in support of this theory, to-wit, evidence tending to prove the alleged facts noted above, was properly allowed; its weight and effect being a matter for the jury.

[Morrison, et al. v. Clark.]

(5) Our opinion is that the witness White, who was evidently in a position to know, was properly allowed to testify that, since the time of the alleged deposit and before this suit was commenced, the bank had ceased to do business as a going concern. This, we think, was a collective fact to which the witness might testify in the terms used by him. If the defendant controverted the fact and desired to know on what the witness based his shorthand rendition of the constituent facts implied, it should have drawn out the details on cross-examination.

We are entirely clear to the conclusion that the question put in issue by the complaint and the general denial was one for jury decision. But for the error pointed out the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.