438 So.2d 735 (1983)
Martin Luther WILLIAMS, Jr., et al.
v.
Alvin WILLIAMS and Eljo Williams.
82-70.
Supreme Court of Alabama.
September 30, 1983.
*736 Gary L. Phillips, Gadsden, for appellants.
John Baker, Fort Payne, for appellees.
TORBERT, Chief Justice.
This appeal involves an action brought by two brothers, Alvin and Eljo Williams ("appellees"), against their father, remaining brothers and sisters, the estate of T.L. Williams, and the administrator of the estate of T.L. Williams ("appellants"), seeking to enforce a partnership dissolution agreement ("Dissolution Agreement") between appellees and their deceased brother, T.L. Williams.
Appellees contend that, under the Dissolution Agreement, upon the death of T.L. Williams they became sole owners of all the assets of the partnership, Williams Granary and Feed Company, and, in addition, were entitled to life insurance proceeds from the policies insuring the life of T.L. Williams.
Appellants contest the validity of the Dissolution Agreement, primarily contending that the Agreement should not be enforced because it is an attempted testamentary disposition of property which does not comply with the statutes regarding testamentary dispositions and is not supported by valid consideration.
Following an ore tenus hearing, the trial court entered an order divesting appellants (the heirs-at-law other than the surviving partners) of any and all right, title, claim, and interest in the partnership, while vesting such title and interest solely in appellees (the surviving partners). The trial court denied appellants' motions for a new trial or modification of judgment, and they appealed. We affirm.
Because of the importance of the Dissolution Agreement to the disposition of this appeal, we quote the relevant provisions:
"WHEREAS, the partners are doing business as a partnership under the firm name of Williams Granary and Feed company, and each of the above named partners own an undivided one-third interest in said partnership and its assets, including lands and cattle, and
"WHEREAS, the partners consider it to be to the mutual advantage of themselves and their respective estates and heirs at law, to enter into an agreement whereby, upon the death of the partner first to die, and which partner is sometimes referred to hereinafter as the `deceased partner,' then the heirs at law and the estate of the deceased partner shall *737 be obligated to sell to the surviving partners and the surviving partners shall be obligated to purchase the interest of the deceased partner in the partnership and its assets, including lands and cattle, and the surviving partners shall have the opportunity to continue the partnership business uninterrupted, and
"WHEREAS, the partners mutually desire to use life insurance to achieve these objectives, and
"WHEREAS, the partners mutually agree that the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) shall be the fair reasonable market value of each partner at the time of his death, and
"WHEREAS, partner Alvin Williams is the named insured in Policy # 437919, insuring him for $25,000 natural death... and Policy # 467314, insuring him for $10,000 natural death, with total death benefits of $35,000....
"WHEREAS, partner Eljo Williams is the named insured in Policy # 437920, insuring him for $25,000 natural death..., and Policy # 467313, insuring him for $10,000 natural death, with total death benefits of $35,000....
"WHEREAS, partner T.L. Williams is the named insured in Policy # 437921, insuring him for $25,000 natural death..., and Policy # 467315, insuring him for $10,000 natural death, with total death benefits of $35,000....
"NOW THEREFORE, in consideration of the premises, and the further consideration of the mutual agreements and covenants of the parties hereto as hereinafter set forth, the parties hereby agree, each with the other, as follows:
"(1) That all premiums on the hereinabove referred to policies of insurance... shall be paid out of partnership funds....
"(2) Upon the death of any partner, the partnership shall be continued by the surviving partners, and the estate of the deceased partner and his heirs at law, shall transfer and sell and convey to the surviving partners, all the right, title and interest in and to any other partnership assets, including lands and cattle, owned by the deceased partner at the time of his death, and which transfer, sale and conveyance by the estate of, or the heirs at law of such deceased partner, shall be in return for the sole consideration of the payment of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) to the hereinafter designated beneficiary of such deceased partner, and upon the payment of said life insurance proceeds of $35,000, the estate of the deceased partner and his heirs at law, shall have no further right, title and interest in the partnership or any of its assets, including lands and cattle.
"(3) Upon the death of a partner, the surviving partners shall proceed to collect the proceeds of the above named policies insuring the life of the deceased partner, and shall pay to the hereinafter named beneficiary of the deceased partner the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000), and which said sum represents the fair reasonable market value at the time of death of all the right, title and interest in the partnership or any of its assets, including lands and cattle, of such deceased partner, and said payment shall be made without delay upon securing from such designated beneficiary and the heirs at law and the executor or administrator of the estate of the deceased partner, all necessary and properly executed instruments necessary to effectuate the transfer of all the right, title and interest of the deceased partner in the partnership or any of its assets, including lands and cattle.
"(4) Partner Alvin Williams does hereby designate as his beneficiary of the proceeds of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) as his interest in the partnership, his beloved wife, Joyce Williams, if she be living at the time of his death.
"(5) Partner Eljo D. Williams, does hereby designate as beneficiary of the proceeds of THIRTY-FIVE THOUSAND AND NO/100 dollars ($35,000) as his interest *738 in the partnership, his beloved wife, Illa Va Williams, if she be living at the time of his death.
"(6) Partner T.L. Williams, does hereby designate as beneficiaries of the proceeds of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) as his interest in the partnership, his two beloved brothers, Alvin Williams and Eljo D. Williams, share and share alike.
". . . .
"(9) It is agreed that the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) shall represent the fair reasonable market value of all the right, title and interest in and to the partnership and its assets, including lands and cattle, of any partner at the time of his death, and in no event shall any estate of the deceased partner or his heirs at law or beneficiary receive more than the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) for the interest of such deceased partner in the partnership and its assets, including lands and cattle, unless this instrument be modified in writing, signed by each of the partners.
". . . .
"(11) The surviving partners and the executor or administrator of the deceased partner's estate and his heirs at law and beneficiaries, shall make, execute and deliver any and all documents necessary to carry out the purposes and intent of this agreement, and this agreement shall be binding upon the surviving partners, their legal representatives and assigns, and upon the executor or administrator of the estate of the deceased partner and his heirs at law and beneficiaries, and their successors and assigns.
"(12) The surviving partners, upon the death of a partner, shall not be required to make any inventory or accounting of partnership assets to the executor or administrator of the estate of the deceased partner, nor to his heirs at law or beneficiaries, and the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000) shall represent the fair reasonable market value of the interest and ownership of the deceased partner in said partnership and its assets, including lands and cattle, at the time of the death of such partner.
"(13) Upon payment of the sum of THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($35,000), to the designated beneficiary as hereinabove set forth, the surviving partners shall then be entitled to all profits of the partnership, and shall bear all losses after the date of the deceased partner's death, and shall be liable for any and all partnership debts and liabilities existing at the time of the death of such deceased partner and no interest or ownership on the partnership assets, including lands and cattle, shall pass to anyone by will or inheritance."
In accordance with terms and provisions of the Dissolution Agreement, the surviving partners as beneficiaries collected the $35,000 life insurance and demanded that T.L.'s remaining heirs transfer and convey to them his one-third interest in the partnership without any offer to pay over any sum to the other heirs. When the heirs rejected this demand, this action was filed.
The issue presented is whether the Dissolution Agreement is an attempted testamentary disposition of property which does not comply with the statutes regarding testamentary dispositions and is not supported by valid consideration. Appellants do not contend that appellees are not entitled to the life insurance proceeds of $35,000. The designation of the beneficiary of a life insurance policy is governed by the provisions of the policy, Outling v. Young, 398 So.2d 256, 258 (Ala.1981), Mutual Savings Life Insurance Co. v. Hall, 254 Ala. 668, 671, 49 So.2d 298, 302 (1951), and such policies are not testamentary.
Alabama law has long recognized that one may validly contract that at his death another may acquire his property on stated terms, provided the contract is based on a valuable consideration. See Cowin v. Salmon, 13 So.2d 190, 244 Ala. 285 (1943). In particular, a disposition of partnership interests by way of contract, effective upon *739 the death of the partner and supported by valid consideration, though not in compliance with the statutes regarding testamentary dispositions, is legal and enforceable. See More v. Carnes, 309 Ky. 41, 214 S.W.2d 984 (1948).
This case is remarkably similar to More v. Carnes. In More, the estate of the deceased partner challenged the validity of a partnership agreement which vested the decedent's partnership interest in the remaining partners in exchange for a life insurance policy. The partnership agreement named the widow of the decedent as the policy beneficiary.[1] The Kentucky Court of Appeals held that "the Partnership Agreement here involved was not testamentary in nature and was not required to be executed in conformity with our statute of wills...." 309 Ky. at 54, 214 S.W.2d at 991. The More court also held that the insurance policy was sufficient consideration to support the agreement's enforceability. The court made no issue of the fact that the life insurance proceeds were paid to the widow in derogation of the estate.
In the present case, the Dissolution Agreement awkwardly sought to provide the means of purchasing the deceased partner's interest for a predetermined price through life insurance proceeds. A life insurance policy serves as legally adequate consideration in exchange for the deceased partner's interest in the partnership unless the terms of the agreement were manifestly unjust at the time of the agreement's making. There can be no question that the $35,000 insurance policy on the life of T.L. constituted valuable consideration for his partnership interest upon his death. Therefore, the Dissolution Agreement is valid and enforceable. The designation of the beneficiary of the life insurance is a separate question from consideration for the underlying executory contract, and, as previously discussed, such designation is not a testamentary disposition.
This opinion does not alter the framework under which this Court examines the validity of partnership agreements. On the contrary, the surviving partners and the deceased partner's estate will be required to carry out partnership dissolution agreements just as they were before this decision. The fact that the decedent selected his partners, as opposed to his spouse or estate, as beneficiaries of the life insurance (the consideration for transfer of his partnership share) is unquestionably permissible. Partners continue to be free to select whomever they wish to benefit from insurance on their lives. If the decedent had intended that his wife or estate receive the proceeds of his life insurance policy, then he must name them as beneficiaries or clearly indicate that the partners, as beneficiaries, are acting as trustees for them.
The other issues raised by appellants are unpersuasive. The trial court had proper jurisdiction under the authority of Dorrough v. McKee, 264 Ala. 663, 89 So.2d 77 (1956). The trial court's finding that certain real property belonged to the partnership is not clearly and palpably incorrect. See § 10-8-70(b), Code 1975. Nor is an action to quiet title or convey real property barred by the Alabama Statute of Nonclaims, § 43-2-350, Code 1975. See Wadsworth v. Hannah, 431 So.2d 1186 (Ala. 1983).
We affirm the trial court's order divesting defendants of any interest or claim in the partnership, and vesting T.L.'s partnership interest solely in the surviving partners, Alvin and Eljo.
AFFIRMED.
ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX, FAULKNER and JONES, JJ., dissent.
JONES, Justice (dissenting).
I respectfully dissent.
*740 In order to clarify the issue presented, it is essential at the outset to understand what is not presented: (1) We need not address what result would obtain had either of the other two partners died first. Our function is restricted to the settlement of the controversy between the parties before us. (2) The facts of this case do not present the issue whether a partnership agreement, which seeks to devise property of one partner upon death to the surviving partners, is a testamentary disposition subject to the statutes regarding such dispositions. Nowhere in the dissolution agreement is there any reference to transfer of the deceased partner's interest, upon the incident of death, to the surviving partners. To the contrary, the partners agreed that it was "to the mutual advantage of themselves, and their respective estates at law, to enter into an agreement whereby, upon the death of the partner first to die ..., then the heirs at law and the estate of the deceased partner shall be obligated to sell ... and the surviving partners shall be obligated to purchase the interest of the deceased partner in the partnership."
I acknowledge the existence of a well-established body of law to the effect that partnership transfers by way of contract, effective upon death of the transferring partner and supported by valid consideration, though not in compliance with the statutes regarding testamentary dispositions, are legal and enforceable. For an excellent discussion of several cases so holding, see More v. Carnes, 309 Ky. 41, 214 S.W.2d 984 (1948) (relied upon by the majority). The dissolution contract before us, however, sought only to provide, through life insurance proceeds, the means by which the surviving partners could purchase, for a predetermined price, the deceased partner's interest from his estate.
The precise issue here presented, then, is whether the trial court erred in giving effect to the dissolution agreement so as to divest the deceased partner's estate of all interest in the partnership without requiring the surviving partners to pay the $35,000 death benefit to the estate.[1]
The trial court's holding sustained the surviving partners' request to enforce the dissolution agreement by requiring the deceased partner's heirs-at-law to convey their partnership interest, without a tender of the life insurance proceeds in payment for such interest. This interpretation necessarily treats the life insurance beneficiary designation and the buy/sell language as inconsistent and irreconcilable provisions of the contract. Admittedly, if the deceased partner had designated as beneficiary of the life insurance proceeds someone other than the two surviving partners, an irreconcilable conflict may have arisen. Where, as here, however, the two surviving partners the obligors under the buy/sell provisions are the beneficiary designees, the contract is fully enforceable so as to carry out its clearly expressed design and purpose.
In unambiguous terms, the preamble provisions of the dissolution contract provide that the surviving partners are to use the insurance proceeds to purchase the deceased partner's interest from his estate or heirs-at-law. The manifest intent of the contracting parties, clearly expressed in the agreement, was to provide insurance whereby the proceeds could be used to purchase, for a fixed price, the partnership interest from those heirs of the deceased partner who became vested with such interest upon the partner's death, rather than to effectuate passage of interest in the partnership to *741 the surviving partners upon the triggering legal incident of death. Any provision purporting to delineate by name those entitled to take as heirs-at-law of any partner dying intestate, absent any valid contractual conveyance as among those partners, is clearly an attempted testamentary disposition violative of the statutes. See Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190 (1943); Ala. Code 1975, § 43-1-30; 94 C.J.S. Wills §§ 111, 165, and 167 (1956).
It goes without saying that the deceased partner's interest in the partnership resided with someone at all times. When T.L. died intestate, having not conveyed his interest upon death to the surviving partners by contract, his interest passed to his estate. It follows, then, that the provision which designates the surviving partners as beneficiaries of the $35,000the fixed value of the deceased partner's interestas well as the buy/sell provisions, is valid and enforceable upon the surviving partners' purchase of the one-third partnership interest from T.L. Williams's remaining heirs-at-law. Otherwise, in my opinion, these remaining heirs-at-law will continue to possess their share of the one-third interest until a proper accounting and payment for that interest is made. Stated differently, I would hold that a conveyance by T.L. Williams's remaining heirs-at-law cannot be compelled until payment is received.
The unfortunate result of the majority opinion is to upset literally hundreds of outstanding partnership dissolution contracts where life insurance is provided as the means by which surviving partners may continue the partnership operation by purchasing, at a price fixed by the contract, the deceased partner's interest from his estate. Pursuant to the holding of the majority, the surviving partners, as the named beneficiaries, may ignore the contractual obligation to purchase, retain the life insurance proceeds, and judicially require the deceased member's estate to transfer to them its acquired interest in the partnership. Indeed, any payment by the surviving partners to the estate or heirs-at-law of the deceased partner would be a mere gratuity.
MADDOX and FAULKNER, JJ., concur.
NOTES
[1] The partnership agreement in More provided that the policy be paid to "Dorothy D. Carnes, wife of Russell L. Carnes, if living, if not living then the children of Russell L. Carnes." 309 Ky. at 43, 214 S.W.2d at 985.
[1] In More, the widow of the deceased partner brought suit against the surviving partner, claiming that the dissolution agreement was unenforceable as violative of the statute of wills and that the life insurance proceeds represented only about one-third of the value of her deceased husband's interest in the partnership. The explicitly stated issue was whether a partnership dissolution agreement which vested, upon death, the deceased partner's interest in the surviving partners and provided as consideration life insurance proceeds (equal to a predetermined value of each partner's interest) payable to the deceased partner's widow, was void as violative of the statute of wills. The majority views this as a distinction without a difference. I view the instant case and More as presenting materially different issues, requiring different results.